UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN AS 8771 LAKE ROAD, COUNTY OF BERRIEN, BERRIEN CENTER, MICHIGAN, Together With All Improvements, Fixtures, and Appurtenances Thereon, Defendant.

No. 1:92:CV:336.

United States District Court, W.D. Michigan.

Oct. 15, 1992.

Edith A. Landman, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, MI, for U.S.

Scott Graham, Gemrich, Moser, Bowser, Fette, et al., Kalamazoo, MI, for defendant.

Edward Haskins, Sr., pro se.

Bernard Haskins, pro se.

## *OPINION*

ENSLEN, District Judge.

This matter is before the Court on the Government's petition for a final order of forfeiture. On May 18, 1992, the United States filed a complaint for forfeiture of the residence located at 8771 Lake Road pursuant to 21 U.S.C. § 881(a)(7). On that same day, Magistrate Judge Brenneman found that there was probable cause to believe that the defendant property facilitated the storage and distribution of marijuana in violation of 21 U.S.C. § 881(a)(7), and he issued a warrant of arrest in rem. The property in question is titled to Edward Haskins, a single man, who lives with his sixteen-year old son, Edward Haskins, Jr., and his cousin, Bernard Haskins.[1]

### *Civil Forfeiture and 21 U.S.C. § 881(a)(7)*

■ The civil forfeiture statute under which the United States proceeds is a powerful weapon. *See generally* Edith Landman and John Hieronymus, *Civil Forfeiture of Real Property Under 21 USC § 881(a)(7)*, Michigan Bar Journal 174 (Feb.1991). It allows the government to seize real property which is used to facilitate any felony drug violation of the Controlled Substances Act. On its face, Section 881 authorizes the seizure of forfeitable property upon a finding of probable cause without prior notice and a hearing. Conviction of the offender is not a prerequisite to civil forfeiture. Once the government shows probable cause in a federal forfeiture, the burden shifts to the claimant to prove by the preponderance of the evidence that forfeiture is inappropriate because 1) the real property was not used to facilitate the commission of a drug offense, or 2) any such use was without the claimant's knowledge, or without the claimant's consent.

The result of these proceedings are dramatic. For example, in this case, a disabled man, his young son, and his adult cousin may lose their family home. If this family is not wealthy, they risk falling into homelessness. This consequence is authorized by statute, despite the fact that none of these individuals has been convicted of a drug offense. Indeed, through an expansive reading of the term "facilitate," some courts have authorized forfeiture in response to contact with the drug trade which can only be described as minimal. *E.g.*, *United States v. Real Property & Residence at 3097 S.W. 111th Avenue*, 699 F.Supp. 287 (S.D.Fla.1988), *aff'd* 921 F.2d 1551 (11th Cir.1991) (home forfeiture justified by a single drug transaction which took place when controlled substances were transferred between two cars parked in the driveway of a residence); *United States v. One Parcel of Real Estate*, 903 F.2d 490 (7th Cir.1990) (home forfeited when owner of one-third interest in the property used a home telephone two times to arrange the sale of cocaine with an undercover agent).

■ According to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims and 28 C.F.R. Part 9, any person who receives personal notice of a forfeiture action having or claiming an interest in the property in dispute must file a verified claim with the Court within ten days after process has been executed, or within such other time as may be allowed upon application to the Court. This claim is to be verified by oath or solemn affirmation, and must state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. According to the Notes of the Advisory Com-

---

1. A person named Louise Haskins signed for the government's certified letter addressed to Bernard Haskins, but the Court does not know if she is a resident of the house in question.

mittee which adopted this Rule, the purpose of this rule is to "require[ ] claimants to come forward and identify themselves at an early stage of the proceedings—before they could fairly be required to answer."

■ The next step is to file an answer to the complaint for forfeiture. An answer must be filed within twenty days after the claim has been filed, and it must assert the claimant's substantive defense.

The substantive defenses available in a civil forfeiture action are stated by the forfeiture statute. In relevant part, Title 21 § 881, states:

(a) *Property Subject*

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \* \* \* \*

(7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted **without the knowledge or consent of the owner.**

### The Status of the Proceedings

On May 21, 1992, Edward Haskins was personally served with a "Notice of Forfeiture Action," a copy of the complaint, and a warrant of arrest in rem by the U.S. Marshal Service. Edward Haskins also was notified by certified letter dated Thursday, May 21, 1992 of this forfeiture action. According to the United States, Edward Haskins' claim was due to be filed on or before Friday, June 5, 1992, fifteen days later.

A letter dated June 5, 1992, signed by Edward Haskins, was received by the United States District Court Clerk's Office on June 8, 1992. This letter was docketed as a claim. Despite this response, on June 8, 1992, a default was entered against Edward Haskins for his failure to respond to the complaint. The government argues that Haskins' response was fatally inadequate, because even if his claim had been timely, he did not file an answer to the complaint as required by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. The government now petitions this Court for a final order of forfeiture.

### The Entry of Default

■ Default under F.R.Civ.P. Rule 55 for the failure to plead or defend against a claim for relief encompasses two steps: (1) the entry of default; and (2) the subsequent entry of a judgment by default. J. Moore, *Moore's Federal Practice*, ¶ 55.02[3]. This Court has entered default, and now the government asks it to move to step two. However, I have decided that it would be imprudent to enter a judgment of default, and I have reconsidered the initial entry of default.

■ Federal Rules of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default." The question of what constitutes "good cause" is left to the trial court's discretion. *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir.1986). There is, however, a strong policy of favoring a trial on the merits. *Id.* As a result, the Sixth Circuit requires less than a "glaring abuse" of discretion to reverse a court's refusal to set aside an entry of default or a default judgment. *Smith v. Commissioner*, 926 F.2d 1470, 1481 (6th Cir.1991). In a case such as this, when no judgment has been entered, the entry of default may be set aside for reasons that may not be sufficient to vacate a judgment. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2696, at 514–15 (2d ed. 1983) (numerous district court citations omitted).

■ According to Sixth Circuit doctrine, this Court must consider three factors to determine whether a default should be set aside: 1) whether reopening the case will prejudice plaintiff; 2) whether defendant has a meritorious defense; and 3) whether defendant's culpable conduct resulted in the entry of default. *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir.) (citing *United Coin Meter v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983)), *clarified, reh'g denied,*

(6th Cir.1990). The Court should apply these factors more liberally when reviewing an entry of default than when considering whether to vacate a default judgment. *Id.* All that defendants must show "is a 'hint of a suggestion' creating 'some possibility that the outcome of trial will be contrary to the result achieved by the default.'" *Smith,* 926 F.2d at 1482 (quoting *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 399 (6th Cir.), *cert. denied sub nom. Garratt v. INVST Fin. Group, Inc.,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987)).

*United States v. One Urban Lot Located at 1 Street A–1,* 885 F.2d 994 (1st Cir.1989), is also instructive on the topic of entries of default in § 881 forfeiture actions. In *One Urban Lot,* a forfeiture defendant filed an answer in the allotted time period, but did not file a claim. The district court entered a default. The appellate court set aside the entry of default, on the basis that

> [t]his action contradicts both old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally. So that to the greatest extent possible controversies are decided on the merits, a district judge should exercise his discretion to grant additional time for the filing of a claim or treat an answer containing all the elements of a claim as a claim when "the goals underlying the time restrictions and the verification [of the claim] are not thwarted."

*Id.* at 1000 (citation omitted).[2]

 I find that there is good cause to set aside the entry of default in this case. First, reopening this case will not prejudice the United States, it will only cause it delay. Second, Edward Haskins' letter suggests that he may have a meritorious "innocent owner" defense.

The defendant does not deny that his house was used in the drug trade, and he does not claim that he was unaware of this fact. Instead, he claims that he did not consent to its use. The complaint of the

United States alleges that Edward Haskins allowed his telephone to be used by others to negotiate the sale and distribution of marijuana (¶ 26), and that he gave consent to the use of his residence as a place to store and distribute marijuana (¶ 28). In contrast, Edward Haskins' letter states:

> It was a one time thing but after that the Valle/Munguia Organization push there [sic] way in my home. I'm in a wheelchair from a car accident that happen [sic] in 1979. My son is only 16 yrs old. I did not know what to do so I went along with these People because I was afraid for my son's life and mine. These People had told me stories about how they took care of People like burning down homes and stabing [sic] People. I told Erozmo Villolobos that I didn't want them here at my home anymore but they still kept coming. * * * I do use Pot sometimes for muscle spasms but I never smoke marijuana in front of my son. [Paragraphs] 18, 19, 20, 21, 22, 23, 24 and 28 [of the Complaint are] not true. I can't afford a lawyer in this matter so I will have to represent myself. * * * I helped the Police in there [sic] investigation but now the Police are saying I was informing the drug Valle/Munigia Organization in there [sic] investigation and this is not true. * * * I also never gave them Permission to use my Phone * * * what I did was wrong but I was in a posission [sic] to where I did not know what to do.

Edward Haskins' cousin, Bernard, also wrote a letter, dated June 6, 1992, and received by the Clerk's office on June 11, 1992. Bernard Haskins' letter disputes paragraphs 5, 6, 18, 19, and 20 of the affidavit of F.B.I. agent Albert Dibrito, which was submitted in support of the complaint of the United States.

Finally, I do not believe that Edward Haskins' culpable conduct resulted in the entry of default. The papers he received from the United States informing him of this action did not describe what he had to do to oppose the government's forfeiture in a very clear

---

2. The court went on to reason that "since we have determined that the substance of a valid claim was before the court in the form of the verified answer, there was no default. There being no default, a default judgment could not be entered. Thus we need not analyze the elements of 'good cause' nor whether Bruno waived the issue." *Id.* at 1001.

manner. In light of the Sixth Circuit's strong policy of favoring a trial on the merits, it would be inappropriate for this Court to grant the United States' petition for a final order of forfeiture at this time.

### The Clarity of the Government's Notice in Forfeiture Proceedings

I am disturbed by the high number of default judgments which are entered in § 881 forfeiture cases. Given the unusually low standard for forfeiture and the gravity of the consequences to individuals and their families who, in some cases, may have a relatively tangential relationship to the drug trade, it is imperative that the procedures which the United States and the Federal Courts use to apply § 881 be beyond reproach. Review of this case has caused me concern about the adequacy of information provided to owners of defendant property, many of whom are not represented by legal counsel. For example, none of the documents Mr. Haskins received told him of the three available defenses (mistake, lack of knowledge, or lack of consent). Instead, he was given citations to the relevant statutes.

Furthermore, the courts and the United States Attorney's Office must try to demystify the legal process by eliminating any unnecessary "legalese." According to one literacy expert, half of the United States' 100 million workers read below the 9th grade level.[3] Yet the letter Bernard Haskins received told him that he had ten days after "process has been executed" to "file" a "claim," and that within twenty days after his claim was filed, he was to file an "answer." The letter also states that a failure to timely file this claim would result in a "default." None of these words are defined.

The notice given to § 881 defendants should clearly explain what they must file, when they must file it, and the consequences if they fail to do so. This Court will construe § 881 defendants' pleadings less liberally if the notice they receive plainly explains that a federal court has found that there is probable cause to believe that his or her property has been used to facilitate an illegal drug trans-action, and that the U.S. government is authorized by law to take the property away from them on that basis. Further, it should clearly state that if the defendant wants to object to this seizure, he or she must send two things to the court: First, a "claim," which is a letter stating a desire to dispute the government's action, and the defendant's ownership interest in the property. Second, an "answer," in which the defendant must claim one of three things—either the government is mistaken, and no drug violation occurred, or the owner did not know about any violation of anti-drug laws, or the owner knew but did not consent. This "answer" should explain the facts which support the claim in detail. (These paragraphs should also specify the date by which the claim and answer must be *received* by the Court.) The notice which alerts its recipient to his or her new status as a defendant should also explain that this is the only opportunity to dispute government's claim, and that if the recipient does not respond, his or her property will be taken. Finally, it might be helpful to enclose copies of the pertinent statutes, rather than simply referring the recipient to the Supplemental Rules for Certain Admiralty and Maritime Claims. What lawyer or judge, not to mention a person unskilled in the law, would ever imagine that Admiralty and Maritime "law" governs the forfeiture of land allegedly used for drug transactions? Dickens' comment comparing the law to an ass seems particularly appropriate.

It is vital that the federal judiciary not only be just, but that it appear just to the average citizen. To a person without legal training, the procedure which results in the forfeiture of a family home without a hearing may seem more like the operation of smoke, mirrors and a flurry of paper than the operation of law. To avoid this perception, the documents which inform a defendant of forfeiture proceedings and the requisite response must be written with the average citizen in mind.

### Assignment of Counsel

The "innocent owner" defense of lack of consent will be difficult to establish. I have

---

**3.** Interview with Dr. Thomas G. Sticht, USA Today, October 29, 1987, at 4B. Some researchers estimate that one out of every five adult Ameri-cans is functionally illiterate. Richard Wade, *Reading, Writing and Rehabilitation*, The New York Times, May 29, 1992, at 29, col. 2.

found little precedent concerning the definition of lack of consent in relation to duress, which seems to be what Mr. Haskins is alleging. Therefore, it is in the interest of justice for this Court to appoint counsel to Mr. Haskins. Mr. Haskins and his counsel will then be granted thirty five days from the date of this Opinion and Order to file a Supplementary Answer, mounting his defense of lack of consent to this forfeiture action. The United States will then be permitted fourteen days to file a response.

The Court is cognizant of the fact that the defendant has a high standard to meet. *E.g., United States v. 141st Street Corp.,* 911 F.2d 870, 879 (2d Cir.1990) (one who knows that his property is being used to facilitate drug transactions but denies consent must show that he took all reasonable steps to prevent his property from being so used); *United States v. 1130 Prince Street,* 1991 WL 153070, 1991 U.S.App. LEXIS 19071 (6th Cir.1991). The bottom line is simply that he should have a fair opportunity to make his best argument on the point.

### ORDER

In accordance with the Opinion entered on this date;

IT IS HEREBY ORDERED that the entry of default against 8771 Lake Road (dkt. # 8, dkt. # 10) is SET ASIDE;

IT IS FURTHER ORDERED that the United States' petition for a final order of forfeiture (dkt. # 16) is DENIED;

IT IS FURTHER ORDERED that Edward Haskins is to be provided with Court appointed counsel at no cost to himself, for the purpose of responding to the claim of the United States against his property. The lawyer appointed to represent Mr. Haskins is Mr. Scott G. Graham. If Mr. Haskins would like to use the services of Mr. Graham, free of cost, Mr. Haskins must contact him. Mr. Graham can be reached at 222 South Westnedge, Kalamazoo, Michigan 49007–4628, (616) 382–1030.

IT IS FURTHER ORDERED that the counsel appointed by this Court, within thirty-five days from the date of this Order, is to submit a brief and such affidavits and/or exhibits which will allow this Court to resolve the forfeiture action at bar. This shall be termed Defendant's Supplemental Answer;

IT IS FURTHER ORDERED that the United States may file a response within fourteen days of receipt of defendant's brief. The Court will then resolve the United States' petition for final order of forfeiture on the basis of all the documents filed with the Court at that time. All documents are to be filed with the Clerk of the Court, 410 West Michigan Avenue, Kalamazoo, Michigan.