**UNITED STATES of America,**
**Plaintiff,**

v.

**TWO PARCELS OF REAL PROPERTY LOCATED AT 101 NORTH LIBERTY STREET AND 105 LIBERTY STREET IN CLANTON, CHILTON COUNTY, ALABAMA, With all Appurtenances and Improvements Thereon, Defendants,**

**Veronica Walker, Claimant.**

**No. CIV. A. 97–T–862–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 21, 2000.

John T. Harmon, Redding Pitt, U.S. Attorney, U.S. Attorney's Office, Montgomery, AL, for United States of America, plaintiffs.

William P. Boggs, Boggs & Hayes, Clanton, for Two Parcels of Real Property Located at 101 North Liberty Street and 105 Liberty Street in Clanton, Chilton County, Alabama, AL, With all Appurtenances and Improvements Thereon, defendants.

Daniel G. Hamm, Keith & Hamm, Montgomery, AL, for Veronica Williams Walker, claimants.

## OPINION

THOMPSON, District Judge.

In this lawsuit brought pursuant to 21 U.S.C.A. § 881(a)(7), plaintiff United States of America seeks forfeiture of two defendant parcels of property which it alleges were used to facilitate the sale of cocaine. Only one person, Veronica Walker, has filed a claim to the two parcels.[1] This lawsuit is now before the court on five motions: three motions for dismissal and a

---

1. Earlier in this proceeding, both Mrs. Walker and her husband (Joseph Walker) filed motions to dismiss, but, after the denial of the dismissal motions, only Mrs. Walker has come forward with a claim to the two parcels. She then subsequently filed the motions to dismiss and to compel which are now pending.

motion to compel filed by Mrs. Walker and a motion for summary judgment filed by the government. For reasons that follow, the court will deny Mrs. Walker's motions to dismiss and compel and will grant the government's summary-judgment motion.

## I. BACKGROUND

In the light most favorable to Mrs. Walker, the facts are as follows. On January 2, 1997, Mrs. Walker, Joseph Walker (her husband), and Gaisha Williams (their daughter) were charged in a 14–count superseding indictment in federal court.[2] In counts one through 13, they were charged in various counts with possession and distribution of cocaine and cocaine base (in this instance, "crack cocaine"); count 14 sought forfeiture of certain real property. The indictment resulted from a months-long investigation in which law-enforcement personnel and informants conducted controlled buys of cocaine and crack cocaine from the Walkers and Ms. Williams.[3] Some of the illegal drug activity occurred in the Walkers' residence, located at 101 North Liberty Street in Clanton, Alabama (hereinafter "Parcel One"), and in Ms. Williams's residence, located at 105 Liberty Street in Clanton (hereinafter "Parcel Two"). Mrs. Walker purchased both parcels in September 1991.[4]

Mr. Walker pled guilty to one count of distributing an ounce of crack cocaine,[5] and Mrs. Walker and Ms. Williams pled guilty to one count of distributing two-to-three grams of crack cocaine.[6]

On June 2, 1997, pursuant to 21 U.S.C.A. § 881(a)(7), the United States initiated the current lawsuit by filing a verified complaint requesting civil forfeiture of the two parcels. Not until two years later, on September 1, 1999, after protracted initial legal skirmishing, including an unsuccessful appeal to the Eleventh Circuit Court of Appeals, did Mrs. Walker file an answer to the government's verified complaint and a claim to the parcels. She is the only one who has filed a claim for the parcels; neither Mr. Walker nor Ms. Williams filed a claim. The government moved for summary judgment, and Mrs. Walker filed three motions for dismissal and a motion to compel.[7]

## III. MRS. WALKER'S MOTIONS TO DISMISS AND TO COMPEL

As stated, Mrs. Walker has filed two motions to dismiss; with these two motions, she charges violations of the eighth amendment's excessive fines clause and of government written policy. She also has a third motion to dismiss and a motion to compel; with these two motions, she seeks to have the court compel the government to comply with a plea agreement by dismissing this lawsuit.

### A. Excessive Fines

■ Mrs. Walker asserts that the government's forfeiture action is a violation of the eighth amendment's excessive-fines clause, which provides that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual pun-

---

**2.** The criminal case is styled *United States v. Walker*, criminal action no. 96–208–N (M.D.Ala.)

**3.** The government avers that the Walkers and Ms. Williams sold 154.5 grams of cocaine and 86.1 grams of crack cocaine. *See* Verified complaint for forfeiture, filed June 2, 1997, at 3.

**4.** *See* Verified claim, filed September 11, 1999; Verified complaint for forfeiture, filed June 2, 1997, at 6, 8–9.

**5.** *See id.* at 4. At his change-of-plea hearing, Mr. Walker pled guilty pursuant to an agree-

ment that appeared to ascribe sales of 50–to–150 grams of cocaine to him, but the court will accept the government's assertions. *See* United States of America's motion for summary judgment, filed September 21, 1999 (change-of-plea hearing at 19).

**6.** *See* United States of America's motion for summary judgment, filed September 21, 1999 (plea agreement at 2–3, ¶ 7; change-of-plea hearing at 27).

**7.** *See supra* note 1.

ishments inflicted." U.S. Const. amend VIII. More specifically, Mrs. Walker argues that, due to a finding in her criminal sentencing proceeding that she was indigent and incapable of paying a criminal fine, the forfeiture of her property in this civil case violates the clause. Her argument lacks merit.

■ The excessive-fines clause "requires a review of the proportionality of the fine imposed," that is, a review of whether the fine imposed by civil forfeiture is excessive given the criminal offense underlying the action. *See United States v. One Parcel Property Located at 427 and 429 Hall Street,* 74 F.3d 1165, 1172 (11th Cir.1996); *see also United States v. 817 N.E. 29th Drive, Wilton Manors,* 175 F.3d 1304, 1309 (11th Cir.1999) ("[a] fine is excessive 'if it is grossly disproportional to the gravity of a defendant's offense'") (quoting *United States v. Bajakajian,* 524 U.S. 321, 333, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998)), *cert. denied,* —— U.S. ——, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). Therefore, inquiry under the clause focuses on whether the forfeiture is "too much" given the owner's offense, not on whether the owner is able to afford the fine imposed by the forfeiture. *See Wilton Manors,* 175 F.3d at 1311 ("[t]he Supreme Court ... has made clear that whether a forfeiture is 'excessive' is determined by comparing the amount of the forfeiture to the gravity of the offense ... and not by comparing the amount of the forfeiture to the amount of the owner's assets.... [E]xcessiveness is determined in relation to the characteristics of the offense, not in relation to the characteristics of the offender.") (footnote omitted). Mrs. Walker's argument rests on the latter inquiry (whether she is able to afford the fine) and thus does not implicate the excessive-fines clause.

Nevertheless, even if Mrs. Walker were making a proportionality argument based on the gravity of the offense, she would still lose. The forfeiture of Parcels One and Two does not constitute an excessive fine. There is no definitive checklist of relevant factors to use in deciding whether a fine that results from a forfeiture is excessive. *See Hall Street,* 74 F.3d at 1172 ("[t]he relevant factors will vary from case to case").[8] Nevertheless, in *Wilton Manors,* the Eleventh Circuit outlined some helpful pointers: First, "if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." 175 F.3d at 1309 (footnote omitted). And, second, "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive." *Id.* at 1310. Thus, the method for determining excessiveness can be straightforward: compare the value of the forfeited property to the fines that could have been imposed at sentencing.

Mrs. Walker asserts that Parcels One and Two are valued at $ 17,400 and $ 6,700, respectively, for a total value of $ 24,100.[9] The total value is well within the range of

8. Although the court in *Hall Street* declined to adopt a definitive checklist of relevant factors, other courts have noted that the factors could include (1) the culpability of the claimant; (2) the gravity of the crime; (3) the sentence that could have been imposed on the perpetrator of the offense; and (4) the nature and value of the property forfeited. *See United States v. Certain Real Property Located at 11869 Westshore Dr.,* 70 F.3d 923, 927–30 (6th Cir.1995); *United States v. Real Property Located In El Dorado County at 6380 Little Canyon Road,* 59 F.3d 974, 985–86 (9th Cir.1995); *United States v. Milbrand,* 58 F.3d 841, 847–848 (2d Cir.1995).

9. Mrs. Walker relies upon a document that appears to be a computer printout from "Glenn McGriff, Tax Collector." Claimant's motion to dismiss—violation of government policy, filed October 21, 1999 (Attachment 1). However the document is neither signed nor notarized. The government claims that the properties are valued at approximately $ 20,000 (Parcel One) and $ 10,000 (Parcel Two). Verified complaint for forfeiture, filed June 2, 1997, at 6, 9. Nevertheless, the result is the same under either assessment.

fines prescribed by Congress and the sentencing guidelines fines for the drug violations to which the Walkers and Ms. Williams pled guilty. Mrs. Walker and Ms. Williams were convicted of distributing two-to-three grams of crack cocaine from Parcel One (101 North Liberty Street), which carried an *adjusted* total offense level of 17 at their sentencing, and an *adjusted* criminal-history category of I and II, respectively,[10] and allowed for imprisonment from 24 to 30 months and 27 to 33 months, respectively, *see* U.S.S.G. Ch. 5 Pt. A, and a fine in the range of $5,000 to $50,000.[11] *See* U.S.S.G. § 5E1.2(c).[12] The statutory maximum fine for Mrs. Walker and Ms. Williams's violation was $1,000,000. *See* 21 U.S.C.A. § 841(b)(1)(C).

Mr. Walker was convicted of distributing an ounce of crack cocaine from Parcel One. This amount of crack cocaine equals 28.35 grams,[13] which carries an *unadjusted* base-offense level of 28, *see* U.S. Sentencing Guidelines Manual § 2D1.1(c) (1995), and an *unadjusted* criminal-history category of I, and allows for imprisonment from 78 to 97 months, *see* U.S.S.G. Ch. 5 Pt. A, and a fine in the range of $12,500 to $125,000, *see* U.S.S.G. § 5E1.2(c).[14] The statutory maximum fine for Mr. Walker's violation was $4,000,000.[15] *See* 21 U.S.C.A. § 841(b)(1)(B)(iii).

Moreover, the government avers in its verified complaint that 2.5 grams of crack cocaine were sold from Parcel Two (105 Liberty Street).[16] Mrs. Walker (as the court will explain later in this opinion) did not contest this assertion. The distribution of 2.5 grams of crack cocaine invokes an *unadjusted* base-offense level of 20, *see* U.S.S.G. § 2D1.1(c), and an *unadjusted* criminal-history category of I, and allows

**10.** By "adjusted," the court means that it has made the adjustments set forth in the U.S. Sentencing Guidelines Manual's General Application Principles, *see* U.S.S.G. § 1B1.1, such as applying "specific offense characteristic" to the "base offense level" and applying a "criminal-history category" of more than I where appropriate. *See id.*

**11.** *See* Judgment for Veronica Williams Walker in *United States v. Walker*, criminal action no. 96–208–N, at 1 (M.D.Ala. May 22, 1997); Judgment for Gaisha Latoria Williams in *United States v. Walker*, criminal action no. 96–208–N, at 1 (M.D.Ala. May 22, 1997). Without an adjustment, Mrs. Walker's and Ms. Williams's offenses would carry a base offense level of 20, *see* U.S.S.G. § 2D1.1(c), and a criminal history category of I, and thus would allow for imprisonment of 33 to 41 months, *see* U.S.S.G. Ch. 5 Pt. A, and a fine in the range of $7,500 to $75,000. The court, however, has given Mrs. Walker and Ms. Williams the benefit of the doubt by applying adjusted guideline principles, *see supra* note 10, which reflect a lighter sentence.

**12.** All references to the United States Sentencing Guidelines Manual ("U.S.S.G.") will appertain to the 1995 edition.

**13.** U.S. Sentencing Guidelines Manual § 2D1.1 cmt. 10, at 94 (1995), states that one ounce equals 28.35 grams.

**14.** The court has given Mr. Walker the benefit of the doubt by using an unadjusted, as opposed to adjusted, application of the sentencing guidelines factors, *see supra* note 10, with the result the court has used a lighter sentence for him. The judgment of commitment for Mr. Walker reflects that his total offense level was 33, and his criminal history category was II. *See* Judgment for Joseph Nathan Walker in *United States v. Walker*, criminal action no. 96–208–N, at 6 (M.D.Ala. May 22, 1997).

**15.** While the *Wilton Manors* court appears to suggest that a trial court should use unadjusted, as opposed to adjusted, sentencing guidelines factors, *see supra* note 10, the appellate court does not fully explain why this should be so. In Mr. Walker's case, for example, the application of unadjusted guidelines factors fails to reflect the actual gravity of his offense because it fails to take into consideration all 'relevant conduct.' Mr. Walker pled guilty to distributing an ounce of crack cocaine but his pre-sentence report reflects that he distributed much, much more than an ounce, and, under the Sentencing Guidelines, he was therefore subject to being sentenced for all related illegal drug conduct, not just the ounce for which he pled guilty. *Wilton Manors* does not explain why a trial court should not consider the true and total gravity of Mr. Walker's drug offense in determining whether there has been a violation of the excessive-fines clause.

**16.** *See* Verified complaint for forfeiture, filed June 2, 1997, at 3.

for an imprisonment of from 33 to 41 months, *see* U.S.S.G. Ch. 5 Pt. A, and a fine in the range of $ 7500 to $ 75,000, *see* U.S.S.G. § 5E1.2(c). The statutory maximum fine for the violation was $ 1,000,000. *See* 21 U.S.C.A. § 841(b)(1)(C). Since the value of Parcel Two is within the permissible range of fines prescribed by Congress and the sentencing guidelines, it is not excessive. Moreover, law enforcement authorities discovered drug paraphernalia used to cook crack cocaine on Parcel Two.[17]

Therefore, whether based on the conviction of Mrs. Walker, Mr. Walker, or Ms. Williams, or other evidence, the forfeiture of Parcels One and Two would not be excessive.[18]

Finally, the forfeiture of Parcels One and Two would not be excessive when compared to forfeiture that was considered and found allowable by the Eleventh Circuit in *Hall Street*. In *Hall Street*, the appellate court reasoned that the forfeiture of the claimant's real property worth $ 65,000 did not violate the excessive-fines clause in light of the claimant's level 14 offense under the federal sentencing guidelines (for possession with the intent to distribute three grams of cocaine), which was punishable by 21 months in prison and a $ 40,000 fine, and in light of the presence of additional factors, particu-larly, that he was found with marijuana, large amounts of cash, bullets, and a .38 caliber gun, and "he was quite close to a junior high school." 74 F.3d at 1172. Given the severity of criminal punishments that the Walkers and Ms. Williams faced in this case, the court finds that their culpability does not significantly differ from that of the claimant in *Hall Street*, and thus forfeiture in this case is not excessive when compared with that found not to be excessive in *Hall Street*.

### B. *Violation of Plea Agreement*

Mrs. Walker argues that the government has violated a plea agreement not to pursue forfeiture of Parcels One and Two, and for this reason she seeks to have the court compel compliance with the plea agreement and dismiss this civil lawsuit. The government charged Mrs. Walker with three counts in the indictment—counts one, six, and 14. Counts one and six charged drug offenses and count 14 sought forfeiture of Parcels One and Two pursuant to 21 U.S.C.A. § 853.[19] In the plea agreement, Mrs. Walker agreed to plead guilty to count six of the indictment.[20] However, although the criminal judgment of conviction reveals that counts one and 14 were dismissed on the motion of the government,[21] neither the plea agreement nor anything said at the

17. *See id.*, at 3–4.

18. Admittedly, the Walkers and Ms. Williams were convicted of offenses occurring upon Parcel One, not Parcel Two. However, § 881(a)(7) does not require a *conviction* on a covered offense; it requires only the *violation* of a § 841(a) prohibition. *See also United States v. Real Property Commonly Known as 8771 Lake Road*, 818 F.Supp. 199, 200 (W.D.Mich.1992); *United States v. Approximately 2,475,840 Lbs. of Clean, Unroasted Coffee Beans*, 608 F.Supp. 288, 291 (D.Puerto Rico 1985) ("where a statute contains a forfeiture clause which is in rem in nature and not in personam, and the clause does not expressly or impliedly provide for a prior conviction of the individual offender, such a conviction is not a prerequisite of the forfeiture. A conviction in these cases is not necessary because the property, and not the person, is considered to be the offender.") (citations omitted).

Moreover, as stated later, the government may prove probable cause by hearsay and circumstantial evidence. Here, the government has provided evidence other than convictions of the Walkers and Ms. Williams of illegal drug activity in connection with Parcels One and Two.

19. *See* Claimant's brief in support of her motion to dismiss—accord and satisfaction, filed December 14, 1999 (superseding indictment at 6).

20. *See* United States of America's motion for summary judgment, filed September 21, 1999 (plea agreement at 1, ¶ 2).

21. *See* Claimant's brief in support of her motion to dismiss—accord and satisfaction, filed December 14, 1999 (judgment of conviction in criminal case, entered on May 22, 1997).

change-of-plea hearing reflected an agreement by the government to dismiss count 14.[22]

■ In her argument, Mrs. Walker fails to acknowledge the distinction between criminal and civil forfeiture. Criminal forfeiture provisions under 21 U.S.C.A. § 853 "authorize an in personam action against a defendant in a criminal case, and forfeiture in such a case is imposed as a sanction against the defendant upon his conviction." *United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Mich.*, 910 F.2d 343, 346 (6th Cir. 1990). In contrast, a "[civil] forfeiture proceeding under 21 U.S.C.A. § 881(a)(7) is an in rem action brought against seized property pursuant to the legal fiction that the property itself is guilty of facilitating a crime." *United States v. One Parcel of Property Located at Rt. 1, Box 137, Randolph, Chilton County, Ala.*, 743 F.Supp. 802, 804 (M.D.Ala.1990) (Thompson, J.). The remedies of criminal and civil forfeiture are mutually exclusive, and thus the government may prosecute a civil forfeiture proceeding even though a prior criminal forfeiture proceeding has been unsuccessful. *See United States v. Dunn*, 802 F.2d 646 (2nd Cir.1986), *cert. denied* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987). Therefore, the sentencing court's dismissal of count 14 does not necessarily preclude the initiation of a civil-forfeiture proceeding.

■ To be sure, the government may enter plea agreements that prohibit the initiation of later forfeiture actions. *See In Re Arnett*, 804 F.2d 1200 (11th Cir. 1986). In *United States v. Rewis*, 969 F.2d 985 (11th Cir.1992), the Eleventh Circuit cautioned that the treatment and interpretation of plea agreements should be done with the following concerns in mind:

> "When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said

to be part of the inducement or consideration, such promise must be fulfilled. Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered the plea. If the defendant's understanding is disputed by the government, we determine the terms of the plea agreement according to objective standards.... [T]he proper analysis for interpreting a plea agreement [is set out as follows]. First, a hyper-technical reading of the written agreement and a rigidly literal approach in the construction of the language should not be accepted. Second, the written agreement should be viewed against the background of negotiations and should not be read to directly contradict an oral understanding. Third, a plea agreement that is ambiguous must be read against the government.... [T]he method of interpretation should be strictly adhered to because a plea agreement constitutes a waiver of substantial constitutional rights and, therefore, a defendant must be adequately informed of the consequences of the waiver."

*Id.* at 988 (citations and internal quotations omitted).

The case *In Re Arnett* is useful in assessing Mrs. Walker's argument. In *Arnett*, the claimant negotiated a plea with a prosecutor which included the forfeiture of $ 3,000 found on his person at the time of his arrest. During the plea negotiations, the prosecutor acknowledged that the government had no interest in the claimant's house and farm, and the claimant's counsel developed an understanding based upon this representation that the government had agreed not to move against the claimant's real property. After securing the written plea agreement (which included the provision for forfeiture of the $ 3,000 but no mention of the oral agreement prohibiting forfeiture of the real property),

---

**22.** The plea agreement mentions that the government agreed to forgo prosecution of count one in consideration for Mrs. Walker's promise to give the government substantial assistance. *See* United States of America's motion for summary judgment, filed September 21, 1999 (plea agreement at 4, ¶ 16).

the government served on the claimant a complaint for forfeiture in rem seeking forfeiture of the house and farm. The claimant filed a petition for writ of mandamus in the appellate court directed to the district court, and the appellate court granted the writ, holding that it was reasonable for the claimant to rely upon the oral understanding between the parties prohibiting further action against the claimant's property, absent an indication by the government that the plea agreement changed the oral agreement. *See Arnett,* 804 F.2d at 1203.

■ Unlike the claimant in *Arnett,* Mrs. Walker has presented no evidence of any oral agreement precluding the government from seeking forfeiture of her property. In fact, Mrs. Walker characterized her understanding as follows: "I was under the impression that by the dismissal of counts 1 and 14 in the indictment, ... the Government was choosing to forgo any claims they may have had.... I was told by [my criminal defense attorney] that the dismissal of the counts in the indictment meant that the Government would not bring them up again.[23]" These statements do not reflect any promises by government attorneys to forgo civil forfeiture of Parcels One and Two. Furthermore, Mrs. Walker's plea agreement does not contain any provision prohibiting the government from initiating subsequent forfeiture proceedings. Mrs. Walker is not entitled to relief on this motion.

### C. Government Policy

■ Mrs. Walker asserts that the government is violating its own written policy by instituting the forfeiture proceedings. The United States Attorney's Manual sets forth policy guidelines promulgated by the Department of Justice for use by United States Attorneys' offices. The manual lays out minimum net equity levels that generally must be met before federal forfeiture actions are instituted—in particular, that "net equity must be at least 20 percent of the appraised value [of real property], or $20,000, whichever is greater." U.S.A.M. § 9–111.120. Mrs. Walker asserts that, because Parcels One and Two are each valued below the minimum net equity levels required by the manual, they should not be subject to forfeiture.

Mrs. Walker cannot rely upon the United States Attorney's Manual for assistance. The Eleventh Circuit has made clear that the manual has no binding effect in court. *See San Pedro v. United States,* 79 F.3d 1065 (11th Cir.), *cert. denied,* 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). In *San Pedro,* the petitioner, charged with the crimes of bribery and conspiracy to commit bribery, relied upon the United States Attorney's representation that the government would not seek his deportation and therewith negotiated a plea agreement with the government. Afterward, the United States Immigration and Nationalization Service initiated deportation proceedings. The petitioner filed a petition for writ of mandamus or prohibition and temporary restraining order seeking a declaration that the instigation of deportation proceedings violated the plea agreement. The appellate court ruled that statutory prerogatives require a delegation of authority from the United States Attorney General before a United States attorney may promise a criminal defendant non-deportation. The petitioner underscored provisions in the United States Attorney's Manual to demonstrate that the Attorney General had effected the appropriate authorization.

In rejecting the petitioner's argument, the court stressed the importance of the United States Attorney's Manual's introduction, which states

"The Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or

---

**23.** *See* Claimant's brief in support of her motion to dismiss—accord and satisfaction, filed December 14, 1999 (affidavit in support of claimant's motion to dismiss, at 2).

criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice."

U.S.A.M. § 1–1.100. Stating that it could not improve upon the district court's reasoning, the court then concluded that the manual "only provides guidance to officials at the Department of Justice and does not have the force of law." *San Pedro*, 79 F.3d at 1070; *see also, United States v. Carson*, 969 F.2d 1480, 1495 n. 8 (3d Cir. 1992) ("Though the Manual is not binding on United States Attorneys, it is designed to serve as a guide to their conduct...").

*San Pedro*'s ruling applies with equal force in this case: Mrs. Walker cannot rely upon the United States Attorney's Manual to establish a defense to the instant forfeiture action.

## III. GOVERNMENT'S SUMMARY-JUDGMENT MOTION

Having concluded that Mrs. Walker's motions to dismiss and to compel should be denied, the court now turns to the government's motion for summary judgment.

21 U.S.C.A. § 881(a)(7) allows for civil forfeiture of real property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," a drug offense carrying punishment of more than one year's imprisonment.[24] The government now seeks summary judgment on its claims for forfeiture of Parcels One and Two pursuant to § 881(a)(7).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judg-

ment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

██ The government's burden in seeking forfeiture of property pursuant to § 881(a)(7) is to furnish probable cause that a substantial connection exists between the defendant property and the illegal activity. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991). Probable cause is defined as a reasonable ground for belief of guilt, supported by less than prima-facie proof but more than mere suspicion. *See United States v. Real Property on Lake Forrest Circle*, 870 F.2d 586, 590 n. 10 (11th Cir.1989). "The existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.'" *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986) (quoting

---

24. Section 881(a)(7) provides that
"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 * * * * *

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in

any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

*United States v. $4,255,625.39,* 762 F.2d 895, 903 (11th Cir.1985)). Additionally, the government may use both circumstantial evidence and hearsay to establish probable cause. *See Four Parcels,* 941 F.2d at 1440 (citations omitted). Once the government demonstrates that probable cause exists, the burden of proof in a civil-forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture. *See United States v. One Single Family Residence,* 933 F.2d 976, 979 (11th Cir.1991). If the claimant fails to meet this burden, the property is forfeited to the government.

In *Four Parcels,* the Eleventh Circuit Court of Appeals described the requisite summary-judgment standard, within the context of a civil-forfeiture action and when the government is the one seeking summary judgment, as follows: "[W]hen the *government* moves for summary judgment ... the court first must determine whether, as a matter of law, the government has shown probable cause for forfeiture. If not, summary judgment for the government is improper. If so, the court then determines whether the claimant can show, by a preponderance of the evidence, whether the property is forfeit." 941 F.2d at 1439 (citations omitted) (emphasis in original). The Eleventh Circuit then continued: "The court, in deciding this issue on summary judgment, first must determine whether the government has met its 'initial responsibility' of demonstrating the absence of a genuine issue of material fact—that is, taking all the evidence in the light most favorable to the claimant, has the government shown that no reasonable jury could award the property to the claimant? The government, because it does not bear the burden of proof on this issue, may meet this burden by either pointing out to the court specific portions of the record that it believes demonstrate that the claimant cannot show by a pre-

ponderance of the evidence that he is entitled to the property ... or by introducing affirmative evidence negating the claimant's case." *Id.* The appellate court then concluded with the following: "If it meets this burden, and the claimant, in response, fails to introduce significant, credible evidence sufficient to show that a reasonable jury could find, by a preponderance of the evidence, that the claimant is entitled to the property, the government is entitled to summary judgment." *Id.*

 Based on the verified complaint and the evidence in the record, the government has demonstrated probable cause that Parcels One and Two had a substantial connection to illegal drug activities. In its verified complaint, the government provided information that drug purchases conducted by the Walkers and Ms. Williams were either perpetrated on the two parcels or arranged on them for completion at off-site locations.

As to Parcel One (101 North Liberty Street), the government has shown, through it verified complaint and through court records of criminal proceedings, that Mr. Walker was convicted of a drug violation stemming from a transaction in which law enforcement authorities and a confidential informant went to Parcel One and arranged the purchase of an ounce of cocaine from Mr. Walker. Later, the informant made an off-site controlled buy of the ounce of cocaine from Mr. Walker. The government has also demonstrated that Mrs. Walker and Ms. Williams were convicted of distributing two-to-three grams of cocaine base at Parcel One.[25]

As to Parcel Two (105 Liberty Street), the government has shown, primarily through its verified complaint, that a drug purchase was made on Parcel Two and arrangements were made on several occasions on Parcel Two for off-site drug purchases.[26] In addition, upon executing a search warrant on Parcel Two, law en-

---

25. *See* United States of America's motion for summary judgment, filed September 21, 1999 (plea agreement at 2–3, ¶ 7; change-of-plea hearing at 27).

26. *See* Verified complaint for forfeiture, filed June 2, 1997, at 3.

forcement personnel found paraphernalia used to manufacture crack cocaine: baking soda, boiling pots with residue, mixing bowls, and plastic baggies.[27]

Because the government has met its burden of establishing probable cause and its belief in the absence of a genuine issue of material fact, the onus switches to Mrs. Walker to proffer significant credible evidence that a reasonable jury could find, by a preponderance of the evidence, that the property is not subject to forfeiture. Mrs. Walker may satisfy this burden in one of two ways: either by (1) rebutting the government's evidence that the property was used to facilitate illegal drug activity, or (2) showing that she was an innocent owner who did not know of the property's connection with drug sales. *Four Parcels*, 941 F.2d at 1442 (citing *Single Family Residence*, 803 F.2d at 629; *$4,255,000*, 762 F.2d at 906).

Mrs. Walker has responded to the government's initial showing with an affidavit (and supporting brief), which states as follows in relevant part:

"3. During the entry of this plea of guilty I admitted to selling an unlawful substance to an individual working with law enforcement. This sale took place at the home made a subject of this lawsuit.

"4. While this sale occurred on one of the location[s] made the basis of this lawsuit the property was not used in the sale. The property in question was not instrumental in the sale nor did the property in question serve to further the illegal sale.[28]"

Mrs. Walker has therefore not chosen to assert innocent ownership, nor has she denied her own admitted activity on Parcel One,[29] but rather she limits her response to questioning whether her own admitted drug activity on Parcel One is sufficient to warrant forfeiture of Parcel One.[30]

■■■ Mrs. Walker's response is inadequate to the government's initial showing in a number of ways. As to Parcel One, Mrs. Walker has misinterpreted the meaning of "facilitate" in the statutory language. The contested property need not be "instrumental" in the facilitation of the illegal drug activity. *See, e.g., Nnadi v. Richter*, 976 F.2d 682, 686 (11th Cir.1992) ("a car is considered directly involved when it is used to transport an individual to the place where a drug transaction takes place even though it is not used to transport money or drugs."). A substantial connection is sufficiently established when the government shows that illegal drug transactions occurred on real property. *See, United States v. Real Property and Residence at 3097 S.W. 111th Avenue*, 921 F.2d 1551 (11th Cir.1991) (single illegal drug transaction taking place on property is sufficient to show connection between the property and drug activity so as to permit forfeiture); *cf. United States v. Approximately 50 Acres of Real Property*, 920 F.2d 900, 903 (11th Cir.1991) (finding substantial connection permitting forfeiture when the offender used his home "to negotiate and plan an essential component of a specific drug transaction that actually took place"). Mrs. Walker's admission of drug activity on Parcel One is indisputably sufficient to warrant forfeiture of the property. Second, as to Parcel One, Mrs. Walker has not questioned that Mr. Walk-

27. *Id.*

28. *See* Claimant's response to government's motion for summary judgment, filed October 21, 1999 (claimant's affidavit).

29. Indeed, in light of her plea in the criminal proceedings, Mrs. Walker cannot in these civil proceedings deny her drug activity on Parcel One. *See United States v. Schumann*, 861 F.2d 1234, 1237 (11th Cir.1988) ("an issue resolved in the government's favor in a criminal proceeding may not be challenged by the defendant in an attendant civil suit brought by the government") (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963)); *Tomlinson v. Lefkowitz*, 334 F.2d 262, 264 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

30. *See* Claimant's response to government's motion for summary judgment, filed October 21, 1999 (claimant's affidavit at 2).

er and Ms. Williams engaged in substantial drug activity on the property. This additional drug activity on the property indisputably warrants forfeiture of the property as well.

As to Parcel Two, Mrs. Walker has not taken issue with the government's evidence that drugs were sold on the property and arrangements were made on several occasions on the property for off-site purchases. This drug activity indisputably warrants forfeiture of Parcel Two.

Because Mrs. Walker's rebuttal falters, that is, she has failed to introduce evidence that a reasonable jury could find, by a preponderance of the evidence, that she is entitled to the properties, the government is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Mrs. Walker's motions to dismiss and to compel should be denied, that the government's summary-judgment motion should be granted, and that Parcels One and Two should be forfeited to the United States. An appropriate judgment will be entered.