DYER, Senior Circuit Judge:
This case arises out of a dispute concerning the scope of a plea agreement between the United States government and Alberto San Pedro (“San Pedro”) and representations made by the government during plea negotiations. The district court granted summary judgment for the government holding that the United States Attorney and the Assistant United States Attorneys (“AUSAs”) did not have authority to promise, as part of a plea bargain, that San Pedro would not be deported. The Immigration and Naturalization Service (“INS”) was thus free to initiate deportation proceedings against San Pedro. We affirm.
I. BACKGROUND
San Pedro is a citizen of Cuba and has been a lawful permanent resident of the United States since May 2, 1956. Following a federal grand jury indictment for bribery of a federal public official and conspiracy to commit bribery, he pled guilty to the conspiracy charge. The government concedes that the plea agreement expressly affords San Pedro transactional immunity. The written plea agreement contains an integration clause and does not mention the subject of deportation, but, according to San Pedro, the United States Attorney and AUSAs who negotiated on behalf of the government represented, as part of the agreement, that the government would not institute deportation proceedings against him. Nevertheless, INS filed an Order to Show Cause why he should not be deported. San Pedro responded by filing the instant Petition for Writ of Mandamus or Prohibition and Temporary Restraining Order, seeking a declaration that the instigation of deportation proceedings violated the plea agreement because the government had represented that his transactional immunity[1] included a promise of non-deportation.
The government filed a motion to dismiss, which the court converted to a motion for summary judgment. In contesting San Pedro’s claim for breach of the plea agreement, the government contended that San Pedro was never promised non-deportation, and even if he was, the promise did not bind the INS because the United States Attorney and AUSAs had no authority to make such promise. The district court found that the United States Attorney’s Manual (“USAM”) required that the United States Attorney obtain approval from the Department of Justice before conducting negotiations involving deportation. Because the government had produced no evidence concerning whether the prosecutor sought authorization from the Department of Justice, the court denied the government’s first summary judgment motion.
To correct the deficiency, the government filed two more motions for summary judgment, again raising the question of whether the United States Attorney and the AUSAs *1068 had the authority to promise San Pedro he would not be deported. The district court determined there was a dispute as to whether the government made the promise but that the decisive legal issue was whether the United States Attorney had the authority to promise not to deport a criminal defendant as a condition of a plea bargain. The court concluded that nothing in the USAM or the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., (“INA”) vested the United States Attorney with that authority. Thus, any promise regarding deportation did not bind the INS and the court entered summary judgment for the government. This appeal ensued.
II. DISCUSSION
We review the district court’s grant of summary judgment de novo. Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1404 (11th Cir.1994). A party seeking summary judgment must demonstrate that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). Summary judgment is appropriate “if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to [the non-moving party], could not reasonably return a verdict in [that party’s] favor.” Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir.1995) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).
In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court stated: “[W]hen a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Id. at 262, 92 S.Ct. at 499. “When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea.” Id. at 268, 92 S.Ct. at 502 (Marshall, J. concurring in part and dissenting in part). Furthermore, a guilty plea “‘must stand unless induced by ... misrepresentation (including unfulfilled or unfulfillable promises)....’” Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (quoting Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).
We are mindful of the due process considerations underlying these principles, and note that San Pedro does not question the voluntary character of his guilty plea. He does not seek to have the plea vacated; rather, he seeks to enforce a promise allegedly made during plea negotiations. “[T]he general rule requiring governmental adherence to promises made during plea negotiations is subject to two conditions. First, the agent making the promise must be authorized to do so, and second, the defendant must detrimentally rely on the promise. If either condition is lacking, then the agreement is unenforceable and the government may withdraw its offer.” United States v. Kettering, 861 F.2d 675, 677 (11th Cir.1988) (citing Johnson v. Lumpkin, 769 F.2d 630 (9th Cir.1985)). In other words, to enforce a promise made during plea negotiations, there must have been a valid, binding agreement in the first instance upon which the defendant relied in deciding to forego his constitutional rights and plead guilty. For an agreement to be valid and binding, the agent must possess actual authority to make the promise— either express authority or authority implied in or incidental to a grant of express authority. Thomas v. INS, 35 F.3d 1332, 1338 (9th Cir.1994). “Estoppel and apparent authority normally will not substitute for actual authority to bind the United States government.” Id. (citing Utah Power & Light Co. v. United States, 243 U.S. 389, 408-09, 37 S.Ct. 387, 391-92, 61 L.Ed. 791 (1917); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 2-3, 92 L.Ed. 10 (1947)). But see Houck ex rel. United States v. Folding Carton Administration Comm., 881 F.2d 494, 501 (7th Cir.1989). Therefore, assuming San Pedro was promised non-deportation,[2] the INS is not bound unless the United States *1069 Attorney and the AUSAs had either express or implied actual authority to make that representation.
Subsequent to the district court’s order, the Ninth Circuit held in Thomas v. INS that the INS was bound by a cooperation agreement not to seek deportation of a convicted felon. 35 F.3d at 1335. In Thomas the defendant and an AUSA entered into a letter agreement where the defendant was to provide the government with information about narcotics trafficking and work as a cooperating witness for two years. In return, the government agreed not to oppose Thomas’ motions for reduction of sentence or relief from deportation. Nonetheless, after his conviction, the INS initiated deportation proceedings. Id. at 1335-36. The court reasoned that, despite the AUSA’s lack of express authority to bind the INS to the agreement, Congress, through its grant of power “to prosecute for all offenses against the United States,” 28 U.S.C. § 547(1) (1988), had given the United States Attorney implied actual authority to bind the “government,” and thus the INS, not to oppose motions for relief from deportation. Id. at 1339-41. The court found that a United States attorney’s authority to obligate the government “as part of a plea bargain is incidental to his statutory authority to prosecute crimes.” Id. at 1340. According to the Thomas court, the United States attorneys need not receive authority from the attorney general to bind the INS to their agreements with defendants because they have already received such authority from Congress. Id. at 1338-40. Absent any express limitation on that authority by the attorney general, therefore, United States attorneys are free to bind the INS (and presumably other government agencies) to agreements with defendants so long as the agreements fall within the scope of the broad language of § 547(1). Id. at 1338-41.
In Margalli-Olvera v. INS, 43 F.3d 345 (8th Cir.1994), the Eighth Circuit adopted the reasoning of Thomas. There the AUSA agreed that the government would recommend against deportation if the defendant participated in a debriefing; otherwise, the government would remain silent regarding deportation. Id. at 348. In upholding the authority of the AUSA to bind the INS to the plea agreement, the court apparently extended the holding of Thomas to say that a United States attorney has authority to bind all governmental agencies to plea agreements. See id. at 353 (“[A]n Assistant United States Attorney enters into a plea agreement on behalf of the United States government as a whole. Accordingly, promises made by an Assistant United States Attorney bind all agents of the United States government. Therefore, we hold that unless a plea agreement uses specific language that limits the agents bound by the promise, ambiguities regarding the agencies bound by the agreement are to be interpreted to bind the agency at issue.”). If this is a correct reading of Margalli, we reject the suggestion that a government attorney has authority to bind all government agencies to plea agreements by virtue of § 547(1).
We agree that Congress did not expressly grant the United States attorney authority to bind the INS, or any other governmental agency. See 28 U.S.C. § 547 and Thomas, 35 F.3d at 1338-39. Our agreement with the Ninth Circuit, however, ends there. We believe Thomas incorrectly harmonized the statutes that empower the United States attorneys and the attorney general,[3] and failed to consider that the express authority to enforce immigration law is concentrated solely in the attorney general. It is unclear to this court, as it was to the district court, why Congress would have granted United States attorneys the authority to enter into agreements with criminal defendants that bind the INS while simultaneously granting the authority to enforce the specific provisions of the immigration laws to the attorney general in the INA. We therefore follow the principle, upheld by the Supreme Court on numerous occasions, that a specific statute takes precedence over a more general one. *1070 See, e.g., Simpson v. United States, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978); Brown v. General Services Administration, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968-69, 48 L.Ed.2d 402 (1976).
Congress placed the responsibility of enforcing the INA in the hands of the attorney general, who in turn is permitted to delegate her powers to the commissioner of the INS. 8 U.S.C. § 1103(a) and (b); 8 C.F.R. § 2.1 (1995); INS v. Phinpathya, 464 U.S. 183, 185 n. 1, 104 S.Ct. 584, 587 n. 1, 78 L.Ed.2d 401 (1984). The attorney general’s authority includes the power to deport certain classes of aliens pursuant to 8 U.S.C. § 1251(a). Only officers and employees of INS may initiate deportation proceedings by filing an Order to Show Cause with the Office of the Immigration Judge, 8 C.F.R. § 242.1(a) (1995), and only officers authorized in § 242.1(a) may cancel an Order to Show Cause. 8 C.F.R. § 242.7 (1995). Being neither an INS officer nor employee, a United States attorney cannot initiate or terminate deportation proceedings. It follows, therefore, that a United States attorney and AUSAs cannot preclude a deportation proceeding by promising an alien defendant that he will not be deported because such action would constitute an impermissible exercise of authority over the INS. To hold otherwise is to say that the United States attorney’s general power of prosecution can usurp the attorney general’s specific power to deport certain classes of aliens, which we do not believe Congress intended. Thus, reading 28 U.S.C. § 547(1), 28 U.S.C. § 515(a) and 8 U.S.C. § 1103(a) together, we hold that the power to promise a criminal defendant during plea negotiations that he will not be deported is vested in the attorney general.
For the United States attorney to promise a criminal defendant non-deportation, therefore, the attorney general must have delegated the power to him. The parties dispute whether such a delegation has been made, but they agree the only possible sources of delegation are §§ 9-16.020 [4] and 9-73.510[5] of the USAM. We cannot improve upon the district court’s reasoning on this issue:
Upon review, the Court finds that [9-16.020 and 9-73.510], whether read independently or together, do not constitute a delegation of authority to U.S. Attorneys and AUSAs from the Attorney General. There are several reasons for this. For instance, although the government argues to the contrary, the Court is not convinced that, as currently drafted, the USAM could constitute the source of such a delegation. It is well established that the USAM only provides guidance to officials at the Department of Justice and does not have the force of law. U.S. v. Carson, 969 F.2d 1480, 1495 n. 8 (3d Cir.1992) (“Though the Manual is not binding on United States Attorneys, it is designed to serve as a guide to their conduct....”); United States v. North, 1988 WL 148491, 1988 U.S. Dist. Lexis 16017 (D.D.C.1988) (“The [USAM] is not published in the United States Code or Code of Federal Regulations and none of its provisions are promulgated through the Federal Register. It does not have the force of law.”); United States v. Huslage, 480 F.Supp. 870, 873 (W.D.Pa.1979) (“The procedures set forth in the [USAM] are not binding on the district offices_”). The USAM itself states that:
The Manual provides only internal Department of Justice guidance. It is not intended to, and may not be relied upon *1071 to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.
USAM § 1-1.000 (emphasis added). San Pedro relies on the USAM as the source of a U.S. Attomey/AUSA’s authority to promise non-deportation and, thus, as the ultimate source of his right against deportation. The underlined language makes clear that the USAM cannot serve as the source of such a right, however. Put another way, the language of section 1-1.000 establishes that the Attorney General did not intend the USAM to serve as the vehicle for the delegation of authority to U.S. Attorneys and AUSAs.
Even if the USAM could serve as the source of a delegation of the Attorney General’s authority to promise non-deportation, the language in sections 9-16.020 and 9-73.510 is insufficient to effect such a delegation. In order to be effective, a delegation of statutory authority from the Attorney General to other federal officials must be both explicit and affirmative. [See United States v. Pees, 645 F.Supp. 697, 704 (D.Colo.1986) (“If the attorney general were not required to execute an affirmative act in subdelegating his authority, the authority of other administrative agencies vis. a vis. the authority of the attorney general would be hopelessly ambiguous and unworkable.”) ]; see also, United States v. Touby, 909 F.2d 759, 770 (3d Cir.1990) ([the Attorney General must explicitly subdelegate authority for the subdelegatee to be empowered to act]), aff'd, 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991).
The need for express delegations in the area of immigration and naturalization is particularly acute. The area is one in which the Attorney General has already delegated significant authority to another administrative agency — the INS. As a result, the Attorney General must take special care to make delegations of authority in this area to officials outside INS with particular clarity. Otherwise, confusion, and often litigation, concerning the scope of the authority of the INS and that of the other delegatee will likely result.
Confusion of this kind is at the heart of this case. As noted, the Attorney General has delegated [authority] to the INS including] the authority to initiate and prosecute deportation proceedings. See 8 C.F.R. § 2.1 [1995]. Absent a clear, explicit delegation of authority to U.S. Attorneys and AUSAs of the authority to promise non-deportation to criminal defendants, officials at the INS may initiate deportation proceedings against a particular defendant without considering whether an AUSA or U.S. Attorney has promised the defendant non-deportation as part of a plea agreement. Protracted litigation arising out of the ambiguity concerning the authority of the U.S. Attorneys and AU-SAs is the likely result. That is precisely what occurred here.
Neither section 9-73.510 no[r] section 9-16.020 contain an explicit, affirmative delegation to U.S. Attorneys and AU-SAs of the Attorney General’s authority to promise non-deportation. To the contrary, both sections expressly limit the authority of U.S. Attorneys and AUSAs to make such promises. Section 9-73.510 is particularly clear. The section unequivocally provides that, unless a U.S. Attorney obtains prior authorization from the Criminal Division of the Department of Justice, the U.S. Attorney should not promise an alien as part of a plea agreement that he or she will not be deported. Section 9-16.020 goes even farther. The section provides that, if a deportation action against a criminal defendant is pending or completed, a U.S. Attorney or AUSA cannot even negotiate regarding deportation without obtaining specific approval from the Assistant Attorney General of the Criminal Division of the Department of Justice. Nothing in these sections remotely suggests that a U.S. Attorney or AUSA has the authority to negotiate, or to promise anything, concerning deportation absent such approval.[6]
*1072 III. CONCLUSION
Based on the foregoing, we conclude the United States Attorney and the AUSAs who negotiated the plea agreement with San Pedro did not have the authority to promise that he would not be deported for that authority was vested in the attorney general. We further conclude that §§ 9-16.020 and 9-73.510 of the USAM do not constitute a delegation of that authority to the United States Attorney and AUSAs. Summary judgment for the government is therefore AFFIRMED.

. The relevant clause of the plea agreement provides that:
The United States, in consideration of the defendant's compliance with the terms and conditions of this Plea Agreement, agrees not to prosecute ALBERTO SAN PEDRO for any other offenses based upon any evidence revealed in the investigation that led to the charges in the subject indictment. In addition, the United States agrees not to prosecute ALBERTO SAN PEDRO based upon any other evidence of which it is now aware or which, with the exercise of reásonable diligence, it could presently become aware through communication with state or local enforcement personnel.
San Pedro argued that the agreement "not to prosecute ... for any other offenses” included a promise not to deport him because, as part of the basis for the bargain, he dropped his appeal of two state court convictions that predicated the show cause order.

. The parties dispute whether such promise was made, however, the factual dispute is irrelevant in view of our holding that the United States Attorney and the AUSAs lacked authority to bind the INS. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

. Cf. 28 U.S.C. § 547(1) (granting United States attorneys the power to prosecute) with 28 U.S.C. § 515(a) (authorizing the attorney general to conduct "any kind of legal proceeding" which United States attorneys are authorized by law to conduct) and see 35 F.3d at 1338-39 (attorney general and United States attorney have overlapping authority expressly granted by Congress).

. USAM § 9-16.020 provides that:
U.S. Attorneys should also be cognizant of the sensitive areas where plea agreements involve either extradition or deportation. No U.S. Attorney or AUSA has the authority to negotiate regarding an extradition or deportation order in connection with any case. If extradition has been requested or there is reason to believe that such a request will be made, or if a deportation action is pending or completed, U.S. Attorneys or AUSAs, before entering negotiations regarding such matters, must seek specific approval from the Assistant Attorney General, Criminal Division.

. USAM § 9-73.510 provides that:
In a criminal case, the United States Attorney should not as part of a plea agreement or an agreement to testify, or for any other reason, promise an alien that he/she will not be deported, without prior authorization from the Criminal Division.

. The dissent posits that the issue of whether the attorney general expressly delegated authori *1072 ty to the U.S. Attorney in this case is necessarily subsumed in the factual dispute of whether a promise was ever made to San Pedro, and thus summary judgment was precluded. This point is irrelevant for three reasons. First, we assume for summary judgment purposes that the promise was made. Second, the district court specifically found that the government produced unrebutted evidence that the prosecutors who negotiated the plea bargain never obtained such authorization. Moreover, San Pedro conceded in his initial brief that the U.S. Attorney and AUSAs never contacted anyone in the Department of Justice for actual authorization to promise nondeportation. Because San Pedro did not contend in the district court or on appeal that the attorney general authorized the promise, there is no factual dispute precluding summary judgment.