[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2005
THOMAS K. KAHN
CLERK

No. 04-11020
Non-Argument Calender

_____

D. C. Docket No. 97-06023-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DINO IACULLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 7, 2005)

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Dino Iacullo appeals his 235-month sentence, imposed after he pled guilty to one count of conspiring to import cocaine in violation of 21 U.S.C. §§ 952(a) and 963. On appeal, Iacullo argues: (1) he is entitled to specific performance of his

plea agreement because the government breached the agreement by denying his request for a transfer to a Canadian prison; (2) the district court unconstitutionally set his base offense level at 38, under U.S.S.G. § 2D1.1(c)(1), based on a quantity of cocaine not alleged in the indictment or agreed to by him in the plea agreement, in violation of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), which was extended to the federal Sentencing Guidelines in United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); (3) based on the facts of this case, the district court erred by applying a two-level enhancement, under U.S.S.G. § 2D1.1(b)(2)(A), for using a noncommercial aircraft to import a controlled substance, and such an enhancement was in violation of Blakely (now Booker); and (4) the district court erred in assessing three criminal history points for a 1996 conviction, which Iacullo contends was based on the same underlying conduct as the instant offense.[1]

"Whether the government has breached a plea agreement is a question of law that this court reviews de novo." United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). Because Iacullo raised his challenge to the § 2D1.1(c)(1)

---

[1] Iacullo also asserts the district court erred when it declined to conduct a de novo re-sentencing hearing, based on the court's determination that it lacked the discretion to impose a new sentence in the context of a 28 U.S.C. § 2255 petition raising new issues concerning alleged ineffectiveness of counsel. The district court's treatment of Iacullo's request was entirely consistent with our decision in United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000), and we therefore find no error as to that claim.

2

enhancement in the district court, we review the Blakely/Booker issue de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). We will reverse the district court only if any error was harmful. Id. On the other hand, Iacullo raises his Blakely/Booker argument concerning the § 2D1.1(b)(2)(A) enhancement for the first time on appeal, and, accordingly, we review that issue for only plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), petition for cert. filed, (U.S. Feb. 23, 2005) (No. 04-1148). We review "purely legal questions concerning use of the Sentencing Guidelines de novo," and the "district court's application of the Guidelines to the facts with due deference." United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir.), cert. denied, 125 S. Ct. 439 (2004) (internal quotation marks omitted).

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find Booker non-constitutional error and conclude that the government has not met its burden to show harmlessness. Accordingly, we vacate and remand Iacullo's sentence for resentencing, pursuant to the discretionary Sentencing Guidelines scheme now required by Booker.

The relevant facts are straightforward. On March 11, 1997, by superseding indictment, Iacullo and his co-conspirators were indicted with: conspiracy to import cocaine into the United States, in violation of 21 U.S.C. §§ 952(a) and 963

3

(Count 1); two counts of importing cocaine into the United States, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2 (Counts 2 and 3); conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 4); and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 5 and 6). The superseding indictment alleged that the scheme underlying the conspiracy counts took place on various dates during the time period from August 1991 until May 1992.

According to the presentence investigation report ("PSI"), the conspiracy involved the importation of multi-kilogram quantities of cocaine from Colombia, through the Bahamas, and then into Florida, by using various private aircraft and private boats. The general scheme employed by the conspiracy, which involved three separate shipments, was as follows: (1) cocaine would be flown by private aircraft from Colombia to a designated drop site in the Bahamas on Mayaguana Island; (2) after various activities including, inter alia, counting and storing of the cocaine, and the payment of fees, the cocaine would then be loaded onto another aircraft and flown to a boat located off of Conception Island in the Bahamas; (3) the boat would travel to a port in the United States and be transported to a warehouse from which the cocaine was distributed.

Iacullo was "a trusted employee" and the "right hand man" of Richard

Goodman, one of the principal organizers of the conspiracy. Iacullo's duties included loading and unloading cocaine, transporting money, delivering cocaine to the distributors and leasing the warehouse used to unload the smuggling vessel. Iacullo also acted as a "bale kicker" onboard a private aircraft in an aborted drop attempt. For the three shipments involved in the charged conspiracy, Iacullo received fees totaling $200,000.

In the plea agreement, Iacullo agreed to plead guilty to Count 1, in exchange for the government's dismissal of the remaining counts. Iacullo admitted that the quantity of cocaine involved in the offense, for purposes of the Sentencing Guidelines range, was "at least 1,400 kilograms but less than 1,500 kilograms." The government agreed to recommend the following: (1) a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; (2) that Iacullo be sentenced at the low end of the Guideline range determined by the district court; and (3) that any sentence imposed run concurrently with a sentence Iacullo then was serving for a 1996 conviction. The plea agreement also contained the following statement regarding a potential transfer of Iacullo to a Canadian prison:

> The defendant understands and agrees that the United States Attorney's Office does not have authority to effectuate a prisoner exchange between the United States and Canada. Further, the United States Attorney's Office has no objections, should Defendant Iacullo be otherwise eligible to participate in a prisoner exchange program, to the defendant serving his United States sentences of imprisonment in

Canada.

The agreement concluded: "This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings."

At the plea colloquy, Iacullo stated that he wished to plead guilty, and he admitted to the facts as outlined in the government's proffer, which was materially the same as the PSI's description of the conspiracy, detailing Iacullo's involvement in the importation of approximately 632 kilograms of cocaine. The district court confirmed that Iacullo had discussed his plea agreement thoroughly with his lawyer before he signed it. On three occasions during the plea colloquy, Iacullo indicated that his "underlying motivation" for the plea was, in part, so that the government would not oppose his "treaty transfer" and he could serve his sentence in Canada. The district court accepted Iacullo's guilty plea and adjudicated him guilty of Count 1. He then proceeded to sentencing.

According to the PSI, Iacullo's base offense level was 38, pursuant to U.S.S.G. § 2D1.1(c)(1), because he was responsible for more than 150 kilograms of cocaine. The PSI recommended a 2-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(2)(A), for using an aircraft other than a regularly scheduled commercial air carrier to import a controlled substance unlawfully. After a 3-level reduction

6

for acceptance of responsibility, Iacullo's adjusted offense level was 37. Iacullo received three criminal history points based on a 1996 conviction for conspiracy to possess and attempt to possess with intent to distribute cocaine, for which he had received a 293-month sentence. This prior conspiracy took place during November and December 1995. With a total of three criminal history points, Iacullo's criminal history category was II. Iacullo's resulting Guideline imprisonment range was 235 to 293 months.

Iacullo filed several objections to the PSI, arguing, inter alia, that: (1) based on Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), his base offense level was improper because the indictment did not allege a specific quantity of cocaine; (2) the two-level enhancement for use of a noncommercial aircraft was not warranted by the facts of the case; and (3) he should not have received three criminal history points for the 1996 conviction because the district court in that case had considered the instant offense conduct as relevant conduct in determining what sentence to impose.

At the sentencing hearing, the district court overruled Iacullo's objections to the calculation of his base offense level, finding that in the plea agreement, Iacullo "agreed to or stipulated that the amount [of cocaine] was between 14 hundred and 15 hundred" kilograms, and therefore, that the PSI's calculation of his base offense

level was proper. Regarding the aircraft enhancement, the court found that Iacullo was "aboard the plane. He help[ed] off load the planes that fle[w] into this first stop in the Bahamas. And then he is on the plane to be a bale kicker." The court concluded, therefore, that Iacullo's conduct "comes within the scope of the 2 level enhancement."

Before announcing its sentence, the district court heard from Iacullo, who expressed his desire to participate in a "treaty transfer" so that he could serve his sentence in Canada near his family and asked the court to consider making a recommendation to that effect. Pursuant to the plea agreement, the government recommended that Iacullo be sentenced at the low end of the Guideline range and that his sentence run concurrently with his 1996 conviction. The district court then found, in accordance with the PSI, that the Guideline imprisonment range was 235 to 293 months and sentenced Iacullo to a 235-month term of imprisonment, followed by 5 years' supervised release. The court directed that the sentence was to run concurrently with Iacullo's sentence for the 1996 conviction, and also that "the imprisonment period imposed in this sentence not exceed that imposed under [the 1996 conviction] and that therefore they in essence run co-terminously, but in any event not to exceed the sentence imposed" for the 1996 conviction.

After imposition of sentence, Iacullo asked the district judge to sign an order

indicating that he had no objections to Iacullo's participation in "the treaty transfer process." The government stated: "Per the plea agreement we have taken no position with regard to Mr. Iacullo's transfer to Canada. And in fact when called by Washington we specifically stated we have no objection to his transfer to Canada." The government noted, however, that it found the title of the order confusing because it made it seem like the court was granting the treaty transfer. The district judge stated that he could not grant a transfer, but that he would track the language of the proposed order in the recommendation section of the judgment and commitment order (J&C). In the J&C, entered on December 1, 2000, the district court recommended to the Bureau of Prisons Iacullo's "[p]articipation in the Treaty Transfer program with Canada."

Iacullo subsequently filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, arguing, among other things, that his counsel had been ineffective for failing to file a timely notice of appeal from the J&C. Iacullo also filed a memorandum in support of his § 2255 motion, and attached as an exhibit a partial letter from the Office of Enforcement Operations (OEO), informing Iacullo that his request for a transfer to Canada was denied based on (1) his domicile in the United States; (2) his criminal record; (3) insufficient contacts with Canada; and (4) that his transfer "would be inconsistent with the law enforcement needs of the

9

United States." The district court granted Iacullo's § 2255 motion as to the ineffective-assistance claim, dismissed the remaining claims without prejudice, and ordered resentencing.

At the resentencing hearing, Iacullo argued, inter alia, that he had been "denied specific performance of the Treaty Transfer to Canada as part of the [plea] agreement," noting that he pled guilty because it was his "reasonable understanding" that "the government was not going to oppose [his] Treaty Transfer to Canada." Iacullo asserted that this was part of a "side agreement" he had with the government. The district court indicated its intent to impose the same sentence that previously had been imposed, and sentenced Iacullo to 235 months' imprisonment, to run concurrently and coterminously with the sentence imposed for the 1996 conviction, followed by 5 years' supervised release. The court also recommended to the Bureau of Prisons that Iacullo participate in the treaty transfer program with Canada. This appeal followed.

First, Iacullo argues that the government breached the plea agreement when it denied him a "treaty transfer" to Canada. He represents that he thought the transfer was "pre-approved," based on the prosecutor's representations. He urges us to look to "what the parties reasonably understood to be the terms of the agreement," and to resolve any ambiguities against the government.

10

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971). In the event of a breach of a plea agreement, there are two available remedies: "[t]he court can order specific performance of the agreement or afford the defendant the opportunity to withdraw the plea." United States v. Jefferies, 908 F.2d 1520, 1527 (11th Cir. 1990). We interpret and apply plea agreements using objective standards. See United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004).

If the language in a plea agreement is ambiguous, then this Court will consider extrinsic evidence to determine the defendant's reasonable understanding of the agreement, and will read the ambiguous provision against the government. Id. at 1105-06. Otherwise, if the agreement is not ambiguous, then this Court is "limited to the unambiguous meaning of the language in the agreement." Id. at 1106.

Here, the language of the plea agreement is unambiguous and it is clear that the government did not breach the agreement. According to the terms of the plea agreement, Iacullo understood that the U.S. Attorney's Office "does not have the authority to effectuate a prisoner exchange," and that the Office promised to offer

11

"no objections" if Iacullo was found to be "otherwise eligible" for a transfer. The unambiguous meaning of these provisions is that the U.S. Attorney's Office would not oppose Iacullo's request for a treaty transfer to Canada if he was found to be eligible. However, Iacullo was not found to be eligible for the transfer and the OEO denied his transfer request for several reasons, according to its letter. Moreover, it appears that the U.S. Attorney's Office fulfilled its promise when the OEO asked it for a recommendation regarding the transfer request, and it replied that it "would not oppose" a transfer, and that the Office took no position on the matter.[2]

Accordingly, because the unambiguous terms of Iacullo's plea agreement only required the U.S. Attorney's Office to not object to Iacullo's participation in a prisoner exchange program with Canada, there was no breach of the agreement and, therefore, an order of specific performance is not warranted.[3]

---

[2]Iacullo attempts to create an ambiguity by pointing to statements he made at his plea and sentencing hearings which indicate his desire to be transferred to Canada. Even if we were to consider these statements -- which we need not do, given our conclusion that the agreement was unambiguous, and thus resort to extrinsic materials is not appropriate, Copeland, 381 F.3d at 1105-06 -- our review of the transcripts convinces us that Iacullo understood that the U.S. Attorney's Office would "not oppose" his request for a transfer. The record directly belies his current claim, that he understood the agreement to mean that his transfer was "pre-approved."

[3]We reject Iacullo's additional argument that the plea agreement bound the entire federal government not to oppose his transfer request. Cf. San Pedro v. United States, 79 F.3d 1065, 1068 (11th Cir. 1996) (holding that United States Attorney's Office's plea agreement which may have promised non-deportation to an alien did not bind the INS, since "[f]or an agreement to be valid and binding, the agent must possess actual authority to make the promise"). As we stated in San Pedro, "Congress did not expressly grant the United States [A]ttorney authority to bind the INS, or any

12

Next, Iacullo asserts the district court violated his Sixth Amendment rights by holding him accountable, at sentencing, for an amount of cocaine not alleged in the indictment or agreed to by him in the plea agreement. In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. The Court subsequently applied the Apprendi rule in the context of Washington State's sentencing guideline scheme, clarifying that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S. Ct. at 2537 (citations omitted) (emphasis in original).

Most recently, in Booker, the Supreme Court found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. 125 S. Ct. at 749. The Court held

---

other governmental agency." Id. at 1069. Indeed, Iacullo acknowledged in his plea agreement "that the United States Attorney's Office does not have authority to effectuate a prisoner exchange between the United States and Canada."

13

that the mandatory nature of the Guidelines rendered them incompatible with the Sixth Amendment's right to a jury trial.  Id. at 749-52. "This constitutional holding 'means that it is no longer possible to maintain the judicial factfinding that Congress thought would underpin the mandatory Guidelines system that it sought to create.'"  United States v. Garcia, --- F.3d ---, 2005 WL 845532, at *12 (11th Cir. Apr. 13, 2005) (quoting Booker, 125 S. Ct. at 757).

Here, the district court did not commit a Sixth Amendment violation under Booker when it set Iacullo's base offense level at 38 based on a finding that Iacullo was responsible for at least 150 kilograms of cocaine.  At numerous points during the proceedings, Iacullo admitted the facts underlying this amount: (1) he stipulated in his plea agreement that the quantity of cocaine, for the purposes of the Guidelines range, was "at least 1,400 kilograms but less than 1,500 kilograms"; (2) he admitted to the government's factual proffer at the plea hearing which detailed Iacullo's involvement in the importation of approximately 632 kilograms of cocaine; and (3) he did not object to the facts in the PSI relating to the quantity of drugs involved in the conspiracy.  Simply put, there was no impermissible judicial fact finding in violation of the Sixth Amendment in the district court's drug-quantity attribution for purposes of calculating Iacullo's offense level.[4]

---

[4] Iacullo's argument that the "mutual recommendation" in his plea agreement regarding drug quantity did not constitute a "formal stipulation" is without merit and does not alter the

However, because Iacullo was sentenced under the pre-<u>Booker</u> mandatory sentencing scheme, there was <u>Booker</u> non-constitutional error based on the remedial holding of that case. <u>See</u> <u>Rodriguez</u>, 398 F.3d at 1300; <u>see</u> <u>also</u> <u>United States v. Shelton</u>, 400 F.3d 1325 (11th Cir. 2005) (holding that even without <u>Booker</u> constitutional error in the district court's application of the Guidelines, there could be non-constitutional, or statutory, error where the district court had applied the Guidelines in a mandatory fashion). We will reverse based on a <u>Booker</u> non-constitutional error only if the error was not harmless. <u>See</u> <u>Paz</u>, 405 F.3d at 948. A "non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." <u>See</u> <u>United States v. Mathenia</u>, 2005 WL 1201455, *2 (11th Cir. May 23, 2005) (internal quotations and citation omitted).

Thus, in cases involving preserved <u>Booker</u> non-constitutional error, the government must show that the mandatory, as opposed to the advisory, application

analysis. Even though a defendant's plea agreement is not binding on the district court, and therefore, is only a recommendation to the court, this does not change the fact that Iacullo admitted in his plea agreement that he was responsible for between 1,400 and 1,500 kilograms of cocaine. Furthermore, even if the statement regarding drug quantity in the plea agreement was not deemed an admission, Iacullo also admitted to over 150 kilograms of cocaine by not objecting to the government's factual proffer at his plea hearing and by failing to object to the facts contained in the PSI.

15

of the Guidelines did not contribute to the defendant's sentence. Paz, 405 F.3d at 948-49 (holding that the government could not meet its burden under harmless error analysis because the record indicated that had the guidelines been advisory, defendant's sentence would have been shorter); see also United States v. Gallegos-Aguero, --- F.3d ---, 2005 WL1160635, *2 (11th Cir. May 18, 2005) ("Non-constitutional error is harmless when it does not affect the substantial rights of the parties" (citing 28 U.S.C. § 2111)). "The non-constitutional harmless error standard is not easy for the government to meet. It is as difficult for the government to meet that standard as it is for a defendant to meet the third-prong prejudice standard for plain error review." Mathenia, 2005 WL 1201455 at *2.

Based on our careful reading of the record, with particular attention to the transcript of the sentencing hearing, we can find no indication of whether or not the district court would have sentenced Iacullo similarly under an advisory scheme. Cf. Rodriguez, 398 F.3d 1 at 1301 (applying plain error analysis to an non-preserved Booker error, and stating that because the defendant bore the burden of persuasion and no one could know what would have happened in an advisory system, the defendant could not meet his burden). On this record, the government has not met its burden to show harmlessness, or no effect on substantial rights. Cf. United States v. Davis, 2005 WL 1033422 at *2 ("We simply do not know what

the sentencing court would have done had it understood the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a). Therefore, the Government cannot meet its burden of showing that the mandatory application of the guidelines in violation of Davis's Sixth Amendment right was harmless beyond a reasonable doubt."). Accordingly, the government has not met its burden to show harmlessness and we must vacate Iacullo's sentence and remand for resentencing consistent with Booker.

As for Iacullo's second sentencing claim, that the district court erred by imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(2)(A) for using a noncommercial aircraft to import a controlled substance. Section 2D1.1(b) provides the following, inter alia:

> If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance[,] . . . increase by 2 levels. If the resulting offense level is less than level 26, increase to level 26.

U.S.S.G. § 2D1.1(b)(2)(A). In United States v. Chastain, 198 F.3d 1338 (11th Cir. 1999), we held the district court erred by imposing a § 2D1.1(b)(2)(A) upward adjustment based on the defendants' plan to use a private plane to import narcotics. In Chastain, no importation actually occurred because the defendants were arrested before any flight was made to Jamaica to acquire the marijuana for importation

17

into this country.  Id. at 1353 (citing United States v. Joelson, 7 F.3d 174, 179-80 (9th Cir. 1993)).  We held that "the intent to use a private plane [is] not enough to warrant the two-level enhancement." Id.

Here, by contrast, based on the undisputed facts of the plea agreement, the government's proffer at the plea colloquy, and the PSI, a private plane was used several times to pick up cocaine in Colombia and fly it to the Bahamas, while the cocaine was en route to this country.  After no less than three of these operations, Iacullo received fees for his services.  Unlike in Chastain, here, it was not disputed that a private plane was used to move cocaine from Colombia to Mayaguana Island, where it was then placed on a vessel to smuggle into Florida.  On this record, it is clear that a private plane "was used," within the meaning of § 2D1.1(b)(2)(A), during the importation scheme, of which Iacullo was an active participant.  Thus, the district court did not err in assessing the two-level enhancement under § 2D1.1(b)(2)(A).[5]

Finally, we reject Iacullo's argument that the district court erred by assigning three criminal history points for his 1996 conviction, and thereby

---

[5] Moreover, we can find no plain error based on Blakely or Booker in the district court's application of the enhancement, based on, inter alia, Iacullo's inability to satisfy the third prong of the plain-error test by showing an effect on his substantial rights. See Rodriguez, 398 F.3d at 1299-1301 (discussing defendant's burden on third prong, in context of Blakely/Booker claim).  Iacullo has pointed to no place in the record where the district court indicated it would impose a lower sentence if the Guidelines were not mandatory.  Moreover, our own de novo review of the record has revealed no such indication.  Thus, he has not met his burden to show reversible error.

18

increasing his criminal history category. More specifically, Iacullo argues the enhancement violated the Double Jeopardy Clause and U.S.S.G. § 5G1.3 because the sentencing judge for the 1996 conviction "considered [his] criminal activity in the present case as relevant conduct."

In computing criminal history points, three points are added "for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). A "prior sentence" is defined in the Guidelines as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The commentary explains that "[a] sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." U.S.S.G. § 4A1.2, comment. (n.1).

In Witte v. United States, the Supreme Court held that the Double Jeopardy Clause did not bar a prosecution for conduct that had provided the basis for an enhancement of the defendant's sentence in a prior case. 515 U.S. 389, 406, 115 S. Ct. 2199, 2209, 132 L. Ed. 2d 351 (1995). The Court explained that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute

punishment for that conduct within the meaning of the Double Jeopardy Clause." Id. at 399, 115 S. Ct. at 2206. The Court also discussed enhancement statutes, such as the criminal history provisions of the Sentencing Guidelines, and explained that there was no double jeopardy violation "because the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Id. at 400, 115 S. Ct. at 2206 (internal quotation marks omitted).

Likewise, in the instant case, the district court properly added three criminal history points based on Iacullo's 1996 conviction, which involved a 293-month sentence and was based on conduct not part of the relevant conduct for the instant offense. Moreover, the 1996 conviction was a "prior conviction," even though the offense conduct occurred after the instant offense conduct, because the sentence was imposed prior to sentencing for the instant offense. See U.S.S.G. § 4A1.2, comment. (n.1). Accordingly, the criminal history points were scored correctly based on the Sentencing Guidelines.

We also reject Iacullo's secondary argument on this point, that his sentence was not imposed in accord with U.S.S.G. § 5G1.3. The only applicable subsection is (c), which provides that if a defendant is currently serving an undischarged term

20

of imprisonment, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c), p.s.  Iacullo's sentence for the instant offense was imposed to run concurrently with the sentence from his 1996 conviction, thereby avoiding any potential duplicative punishment.  Accordingly, Iacullo received any Guidelines protections to which he was entitled.

Because the government has not satisfied its burden to show the <u>Booker</u> non-constitutional error, resulting from the imposition of sentence under a mandatory Guidelines system, was harmless, we vacate Iacullo's sentence and remand for reconsideration in light of <u>Booker</u>, consistent with the foregoing.[6]

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[6]We note that in this case, the district court correctly determined the Guidelines range for Iacullo's conviction.  On remand, pursuant to <u>Booker</u>, the district court is required to sentence Iacullo under an advisory Guidelines scheme, and, in so doing, must consider the Guidelines range of 235- 293 months' imprisonment, and other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp.2004).  <u>Booker</u>, 125 S.Ct. at 757.