*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0054p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JOHN DEMJANJUK,

*Petitioner,*

*v.*

No. 07-3022

MICHAEL B. MUKASEY,

*Respondent.*

On Review from the Board
of Immigration Appeals.
No. A08 237 417.

Argued: November 29, 2007

Decided and Filed: January 30, 2008

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** John H. Broadley, JOHN H. BROADLEY & ASSOCIATES, Washington, D.C., for Petitioner. Robert Thomson, UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, Washington, D.C., for Respondent. **ON BRIEF:** John H. Broadley, JOHN H. BROADLEY & ASSOCIATES, Washington, D.C., for Petitioner. Robert Thomson, Edgar Chen, UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, Washington, D.C., for Respondent.

---

**OPINION**

---

ROGERS, Circuit Judge. Petitioner John Demjanjuk seeks review of the decision of the Board of Immigration Appeals holding that the Chief Immigration Judge was authorized to preside over Demjanjuk's removal proceeding. Pursuant to 8 U.S.C. § 1229a, a removal proceeding must be conducted by an immigration judge. Demjanjuk contends that the Chief Immigration Judge cannot be considered an immigration judge, and thus lacked authority to order Demjanjuk's removal from the United States. The Chief Immigration Judge, however, clearly meets the statutory definition of "immigration judge." Accordingly, we deny the petition for review.

---

[*]The Honorable William O. Bertelsman, Senior District Judge for the Eastern District of Kentucky, sitting by designation.

1

Demjanjuk, a native of Ukraine, entered the United States pursuant to an immigrant visa in 1952 and became a naturalized citizen in 1958. Prior to immigrating to this country, Demjanjuk served as an armed guard at three World War II Nazi concentration camps. Proceedings in this court regarding his extradition to Israel, for war crimes of which he was subsequently acquitted, are not relevant to the instant case. *See Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993); *Demjanjuk v. Petrovsky*, 776 F.2d 571 (6th Cir. 1985).

On May 19, 1999, the federal government filed a complaint in district court seeking the revocation of Demjanjuk's citizenship. The government asserted that Demjanjuk had been ineligible for a visa due to his wartime service to Nazi Germany and that Demjanjuk had consequently entered this country illegally. The district court ruled in the government's favor, and this court affirmed. *United States v. Demjanjuk*, 367 F.3d 623 (6th Cir. 2004).

On December 17, 2004, the Department of Homeland Security served Demjanjuk with a Notice to Appear, charging that he was removable from the United States. Shortly thereafter, the Executive Office for Immigration Review ("EOIR") initiated a removal proceeding pursuant to 8 U.S.C. § 1229a. Then Chief Immigration Judge ("CIJ") Michael J. Creppy assigned himself to preside over the removal proceeding. After learning that Creppy would be conducting the proceeding, Demjanjuk filed a motion to reassign the case to another judge, alleging, among other things, that the CIJ was without statutory authority to conduct removal proceedings. The CIJ denied the motion and, on December 28, 2005, ordered that Demjanjuk be removed from the United States.

Demjanjuk appealed both the denial of his motion to reassign, and the order of removal, to the Board of Immigration Appeals ("BIA"). The BIA, however, affirmed both rulings. Demjanjuk now seeks review of the BIA's decision with respect to CIJ Creppy's authority to conduct removal proceedings.

Because CIJ Creppy was an immigration judge, as that term is statutorily defined, he was empowered to preside over the removal proceedings brought against Demjanjuk. Accordingly, the BIA did not err in declining to vacate the CIJ's order of removal.

Pursuant to 8 U.S.C. § 1229a, proceedings for deciding an alien's admissibility or deportability must be conducted by an "immigration judge." The term "immigration judge" is defined in 8 U.S.C. § 1101(b)(4) to mean "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under section 1229a of this title."

CIJ Creepy met all of the elements of this definition. First, it is uncontested that CIJ Creppy was an attorney. Second, it is evident from Creppy's certificate of appointment as CIJ that he was appointed by the Attorney General to serve within the EOIR. The certificate, signed by then Attorney General Janet Reno, provides that Creppy was to serve as CIJ in the "Office of the Chief Immigration Judge, Executive Office for Immigration Review."[1]

Third, Creppy's appointment as CIJ constituted an appointment as an administrative judge. Although the Immigration and Naturalization Act does not define "administrative judge," it is clear

---

[1] Demjanjuk does not dispute that Creppy was appointed to serve in the EOIR, but contends that this appointment was made by the Director of the EOIR, rather than by the Attorney General. Demjanjuk notes that at one point in its decision, the BIA stated that the CIJ "is an attorney appointed by the Attorney General's designee (the Director of EOIR) as an administrative judge qualified to conduct removal proceedings." This contention overlooks the BIA's clear statement in the same paragraph that the CIJ "is an attorney whom the Attorney General appointed," and the contention is completely contrary to the evidence. While the BIA statement to which Demjanjuk points is not entirely clear, it appears to refer simply to the fact that a position description for Creppy, signed by the Director of the EOIR, stated that one of Creppy's responsibilities as CIJ was to conduct removal proceedings. The BIA took this description as evidence that Creppy was "qualified" to or "able to" preside over removal proceedings.

from the term's ordinary meaning that it encompasses the position of CIJ. This court "read[s] statutes and regulations with an eye to their straightforward and commonsense meanings." *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000). In its normal use, the term "administrative judge" is understood to refer to an Article I judge who presides over executive agency proceedings. The CIJ is a judge, by the terms of his title, and was appointed by an executive official, the Attorney General, to serve in an executive agency, the EOIR. Common sense thus advises that CIJ Creppy was an administrative judge.

The designation of "Chief" before "Immigration Judge" in Creppy's job title does not change this understanding. Demjanjuk essentially asks this court to ignore the plain meaning of the words "Immigration Judge" because Creppy's title also included the word "Chief." The latter term, however, denotes merely that the CIJ is the head immigration judge, and, as such, may be responsible for performing duties beyond those performed by other immigration judges. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 387 (2002) (defining "chief" as "accorded highest rank"). The word "Chief" does not somehow alter the fundamental meaning of the words "Immigration Judge" to make this position entirely managerial, as Demjanjuk claims it to be.

Fourth, and finally, CIJ Creppy was qualified to conduct immigration proceedings, including those for removal. As noted, § 1101(b)(4) provides that an "immigration judge" should be "qualified to conduct specified classes of proceedings, including a hearing under section 1229a." The parties dispute the significance of this language, in particular the meaning of the term "qualified." The Attorney General contends that this clause requires simply that the appointee be "capable of" presiding over immigration hearings. Demjanjuk, on the other hand, reads this language to require that the Attorney General have specifically "appointed" a judge to conduct removal proceedings in order for that party to be considered "qualified."

Because CIJ Creppy was "qualified" in both senses of the term, we need not decide which of these interpretations is correct. If "qualified" means "capable of," or "able to," then there is little doubt that Creppy was qualified to preside over removal hearings. Demjanjuk does not suggest that Creppy was unable to conduct immigration proceedings effectively, nor does anything in the record so suggest.

This interpretation moreover represents a reasonable reading of the statutory language. In its normal use, the word "qualified" means "competent" or "fit," as the Attorney General contends. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1858 (2002). It is also significant that Congress chose to use the term "appoint" elsewhere in § 1101(b)(4), but not in the clause at issue. If Congress had wanted, it could have said that an immigration judge is an attorney "whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review to conduct [removal proceedings.]" Instead, Congress chose to discuss removal proceedings in a separate clause and use the word "qualified" instead of "appoint."

However, even assuming that the term "qualified" somehow means "appointed" or "delegated," as Demjanjuk suggests, the Attorney General has specifically delegated the power to conduct removal proceedings to all immigration judges. At the time that Creppy presided over Demjanjuk's removal hearing, the pertinent regulation, 8 C.F.R. § 1003.10 (2005),[2] stated that

---

[2]When Creppy was appointed in 1994, § 1003.10 similarly provided that

Immigration judges shall exercise the powers and duties in this chapter regarding the conduct of exclusion and deportation hearings and such other proceedings which the Attorney General may assign them to conduct.

> Immigration Judges . . . shall exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation, removal, and asylum proceedings and such other proceedings which the Attorney General may assign them to conduct.

The CIJ is undoubtedly an immigration judge, and thus was explicitly empowered by the Attorney General to preside over removal hearings.

Demjanjuk argues that § 1003.10 did not grant removal authority to Creppy, since this section does not specifically mention the position of CIJ. This argument is unpersuasive. As discussed, the term "Chief" does not change the basic meaning of the words "Immigration Judge." Because any reasonable person would assume that the position of Chief Immigration Judge is a mere subcategory of immigration judge, the absence of any mention of the CIJ in § 1003.10 is not significant. Nor is it telling that § 1003.9, which describes the CIJ's duties, did not, at the time, list presiding over immigration hearings as one of the position's responsibilities.[3] Although that section only mentioned certain supervisory functions, it made explicit that the position "[was] not limited" to such duties.

This analysis is supported by recent amendments to § 1003.9, the language of which now clearly states that "[t]he Chief Immigration Judge shall have the authority to . . . [a]djudicate cases as an immigration judge." § 1003.9(b)(5). The amended regulation then goes on to provide that "[t]he Chief Immigration Judge shall have no authority to direct the result of an adjudication assigned to *another* immigration judge." § 1003.9(c) (emphasis added). While these amendments do not have retroactive effect, they confirm the previously implicit understanding that the CIJ is an immigration judge. Indeed, the comments to the current version of § 1003.9 state that the regulation was amended in part to clear up "apparent confusion . . . among some observers regarding the role and status of the immigration judges." Authorities Delegated to the Director of the Executive Office for Immigration Review, and the Chief Immigration Judge, 72 Fed. Reg. 53673, 53673 (Sept. 20, 2007).

Moreover, the case that Demjanjuk relies upon for the proposition that a delegation of authority must always be perfectly unequivocal and unambiguous, *San Pedro v. United States*, 79 F.3d 1065 (11th Cir. 1996), is distinguishable. *San Pedro* involved a situation where the Immigration and Naturalization Service ("INS") initiated deportation proceedings against a party despite a plea agreement, approved by the U.S. Attorney and several Assistant U.S. Attorneys ("AUSAs"), which purported to shield the party from deportation. *Id.* at 1067. The Eleventh Circuit held that the U.S. Attorney and AUSAs could not bind the INS, which had been delegated authority over deportation, since the Attorney General had not also granted such power to the U.S. Attorney by an "explicit and affirmative" delegation. *Id.* at 1070-71 (emphasis omitted).

The instant case differs from *San Pedro* in key respects. In *San Pedro*, the document claimed to have given U.S. Attorneys deportation authority, the United States Attorney's Manual, explicitly

---

[3]In full, the regulation provided that

> The Chief Immigration Judge shall be responsible for the general supervision, direction, and scheduling of the Immigration Judges in the conduct of the various programs assigned to them. The Chief Immigration Judge shall be assisted by Deputy Chief Immigration Judges and Assistant Chief Immigration Judges in the performance of his or her duties. These shall include, but are not limited to:
>
> (a) Establishment of operational policies; and
> (b) Evaluation of the performance of Immigration Courts, making appropriate reports and inspections, and taking corrective action where indicated.

8 C.F.R. § 1003.9 (2005).

limited the power of U.S. Attorneys to negotiate concerning deportation orders and stated that U.S. Attorneys should "be cognizant of the sensitive areas where plea agreements involve . . . deportation." *Id.* at 1070 n.4. Here, the regulations describing the powers of the CIJ used broad rather than restrictive language, stating that the CIJ's powers "include, but are not limited to" certain enumerated duties. 8 C.F.R. § 1003.9 (2005). Further, in *San Pedro*, it would have been problematic for U.S. Attorneys to have been delegated deportation power, since that power had already been delegated to a different government entity. Here, on the other hand, there is no risk of opposing government entities' holding the same power and creating conflicting pronouncements. The CIJ and immigration judges operate within the same entity, the EOIR, and have aligned, rather than potentially adverse, interests. Because it would not be problematic or illogical for both the CIJ and the remaining immigration judges to conduct removal proceedings, there is not the same need for exact precision in a delegation that existed in *San Pedro*.

Officials must consider a multitude of issues in delegating authority and drafting regulations. Although they should make their best efforts to do so, they simply cannot anticipate every scenario that may arise or challenge that will be made. It is understandable that an official might take for granted something that is abundantly clear and that has long been understood to be the case. To hold that a delegation will always be ineffective where it does not spell out the obvious would place too onerous a burden on these officials and encourage parties to seek out the slightest of ambiguities in order to evade the law.

For the foregoing reasons, we deny the petition for review.